IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ROBERT BLOOME PLAINTIFF

vs. CASE NO. 5:18-cv-107-DCB-MTP

JOSHUA'S HAVEN, INC. DEFENDANT

ORDER

This matter comes before the Court on Defendant Joshua's Haven, Inc. ("Joshua's Haven")'s Motion to Exclude the Testimony and/or Report of Plaintiff's Expert Wes Hopper (Doc. 42), Plaintiff Robert Bloome ("Bloome")'s Response (Doc. 47), and Joshua's Haven's Reply (Doc. 48). Having read the motion, memoranda in support, the applicable statutory and case law, and being otherwise fully informed in the premises, this Court finds that the Defendant's Motion should be DENIED.

Background

This case arises out of an injury that occurred at Joshua's Haven, an exotic animal sanctuary in Liberty, Mississippi. Susan Williams ("Williams") serves as the Director of Joshua's Haven. Bloome lives on the premises of Joshua's Haven and has worked with Williams as a volunteer for several years, since the beginning of the animal sanctuary. Will Robinson ("Robinson") also worked as a volunteer at the sanctuary at the time of the accident.

On or about June 26, 2017, Bloome and Robinson were cutting down a large tree – on oak, that was approximately 60 or 70 feet tall – on the premises of the animal sanctuary. To do so, Bloome and Robinson used chainsaws, wedges, and a Bobcat skid steer provided by Joshua's Haven. Bloome instructed Robinson to place the Bobcat at the trunk of the tree, intending to push the tree in the direction they planned for it to fall. However, instead of falling in the intended direction, the tree began to slide off the stump. Once a tree begins to slide, it is completely disconnected and can fall in any direction. Robinson yelled for Bloome to run, and Bloome – not knowing where to go – ran away from Robinson's voice. Bloome did not escape the drop area and the tree fell on him. The Plaintiff brings this action alleging that Joshua's Haven acted negligently and was the direct and proximate cause of his injuries and damages.

Bloome designated Wes Hopper as an expert witness. Hopper is a professional, certified arborist who has been trained in the field of arboriculture and tree care techniques. Hopper Dep. [ECF 47-4] at p. 6:4-8. Tree care techniques includes cutting down trees, which Hopper has done throughout his career. See id. at p. 6:11-17. Hopper is an owner-operator of Urban forestry, a full-service tree care company that also provides training classes regarding tree care throughout the country. See id at p. 7:5-9.

## Discussion

Defendant Joshua's Haven moves to exclude the expert testimony and/or report of Wes Hopper, claiming that: (1) Hopper had no Methodology and/or had insufficient facts and data for his opinion, and (2) that Hopper's opinions and testimony will not aid the finder of fact and/or they are nothing more than a legal conclusion. The Court will address each issue in turn.

### **Methodology and Data**

The trial court must analyze the relevance and reliability of an expert's testimony. To do so, the court evaluates a list of factors as presented in the Supreme Court decision Daubert v. Merrell Dow Pharmaceuticals, Inc. Those factors include: (1) testing and testability; (2) peer-review and publication; (3) the existence of a known or discernible rate of error and/or standards governing the application of the technique; and (4) general acceptance in the relevant field of expertise. See e.g., 509 U.S. 579 (1993). However, these factors do not necessarily apply in all situations. The Supreme Court clarified the trial court's approach to determining the reliability of an expert's testimony, stating that:

> "the test of reliability is 'flexible,' and the Daubert factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when

> it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141–142 (1999). Although the Supreme Court suggests that the Daubert standard is flexible, the district court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Hobbs v. Legg Mason Inv. Counsel & Trust Co., N.A., No. 3:09-cv-9-SA-DAS, 2011 WL 304421, at *3 (N.D. Miss. Jan. 25, 2011)(quoting Kumho Tire Co., 526 U.S. at 152). "[T]he heart of Daubert is relevance and reliability. As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that qualifications become an issue for the trier of fact, rather than the court in its gatekeeping capacity." Rushing v. Kansas City Southern, 18 F.3d 496, 507 (5th Cir. 1999).

Therefore, the court must look to this specific expert and his proposed testimony. In this case, the expert testimony pertains to the standards for tree care and the procedure for cutting down trees. The expert relies on the American National Standards Institute ("ANSI") to present nationally approved

proper safety techniques and procedure. As the Plaintiff asserts, “this case does not involve [] mathematical calculations or experimentation like a products liability case or accident reconstruction in a motor vehicle collision case… the methodology applied here was to review the facts available and then compare that to standard practice for cutting down trees.” [ECF 47] at p. 6. This Court agrees with the Plaintiff’s characterization of the case and the role of the expert’s testimony. The expert is clearly evaluating the accident to determine whether Robinson and Bloome were experienced or had the appropriate knowledge to undertake cutting down a large tree. Hopper is also testifying, independent of Bloome and Robinson’s capabilities, to the proper procedure for cutting down trees and the danger involved in such an enterprise.

Joshua’s Haven raises several concerns regarding the data used by Hopper. Namely, that Hopper did not go to the scene of the accident, that he does not know the height or diameter of the tree, the size of the chainsaw used, the wind conditions the day of the accident, or if there were any hollow or rotten spots in the tree. In addition, Hopper did not speak with Will Robinson, but only spoke to Bloome. As such, the Defendant argues that Hopper cannot state whether the decisions and the procedure used by Bloome and Robinson were appropriate or not,

or whether any of their decisions and actions truly caused the injuries of the Plaintiff.

However, the expert has, through his conversation with Bloome and reading of Robinson’s affidavit, identified numerous areas where Bloome and Robinson did not follow the appropriate procedure for cutting down a large tree. Hopper highlighted the following mistakes made by Bloome and Robinson: (1) not identifying a drop zone, (2) not using a rope, (3) incorrectly using the Bobcat to ensure the tree fell in the direction they wanted, (4) failure to have a safety plan in place, (5) failure to use the appropriate safety equipment. [ECF 47] at p. 6. Specific details of the tree at issue or the conditions on the day of the accident are irrelevant to testimony regarding the methods/procedure utilized by Bloome and Robinson. Much of the information that Joshua’s Haven deems missing is unnecessary for Hopper’s analysis. However, the Defendant may raise these issues during cross-examination.

Defendant raises two other concerns, (1) that Hopper’s testimony is not required because the facts are easily comprehensible to a jury and (2) that none of the standards utilized by Hopper are standards required of a private property owner, i.e., Williams.

ANSI regulations are not admissible to show negligence but are "admissible to show the reasonableness of a defendant's actions or whether those actions were consistent with industry standards." Walker v. George Koch Sons, Inc., 2009 WL 837729, at *9 (S.D. Miss. March 27, 2009). If the "ANSI standard is perfectly comprehensible by a lay juror, no expert testimony shall be admitted concerning whether the standard has been violated." Id. If, however, the standard contains technical or confusing concepts, expert testimony will be appropriate. Id. As to the assertion that a jury will be "familiar with chainsaws and cutting down trees," this court heartily disagrees. Tree maintenance and care is a professional enterprise with safety standards unknown to the average lay person. It would be incomprehensible to assume that lay persons would instinctively know the proper procedure for cutting down a large tree, even if a juror is generally familiar with how a chainsaw works. Tree removal is "noted to be one of the top most dangerous professions in the world." Hopper Exp. Report, [ECF 47-5] at p. 2. The technical concepts regarding tree cutting require expert testimony.

To support its second claim that the ANSI standards cannot be used as they do not apply to the Defendant, Joshua's Haven cites a case out of California. In Valdez v. Wei Lu, the California Court of Appeals wrote, "While ANSI provides

guidelines to manufacturers[,] these guidelines are not mandatory… It is unreasonable to demand that defendants conduct themselves according to nonmandatory industry guidelines, when they are not in the tree trimming industry.” No. B265300, 2016 WL 4582172, at *5 (Cal. App. 2 Dist. Sept. 1, 2016)(internal quotation marks omitted). As a preliminary matter, this court is not bound by precedent from a California state court. However, the facts presented in that case are sufficiently different to distinguish its line of reasoning.

Homeowners hired Valdez – who had been trimming trees part-time for 20 years – to cut down limbs around an electrical wire. Id. at *1. The Plaintiff argued that the Defendants had a duty to act reasonably, but also to take “special precautions” per ANSI guidelines. Id. at *5. In dealing with electrical wires, ANSI required defendants to “hire an on-site supervisor, employ a certified utility arborist, have a safety meeting, use an insulated bucket truck, ensure that branches were cut into small pieces, and redirect branches with lowering lines.” Id. Accordingly, the California Court of Appeals held that the homeowner did not have to abide by the ANSI standards, because it is unlikely that the standards would be comprehensible or available to the average homeowner. Id.

Here, the Plaintiff is not using the ANSI standards as additional "special precautions" that Joshua's Haven is required to follow. Instead, Hopper is consulting the ANSI standards as a guide detailing the procedure to cut down trees. See Lee v. Central Gulf Towing, L.L.C., 2005 WL 6773727, at *5 (E.D. La. Aug. 1, 2005)(writing, "the fact that these regulations may not directly apply to vessels does not mean that OSHA as well as the AINSI (sic) standards for safety cannot be consulted… as a guide.") Accordingly, the Defendant may not hold Joshua's Haven to any type of higher standard as potentially set forth by ANSI, but it may use the ANSI as the prevailing national literature regarding safety and tree maintenance. Any issues concerning the applicability or enforcement of the ANSI standards can be addressed through vigorous cross-examination.

**Legal Conclusion**

Rule 704 of the Federal Rules of Evidence "abolishes the per se rule against testimony regarding ultimate issues of fact." Owen v. Kerr-McGee Corp., 698 F.2d 236, 239 (5th Cir. 1983). Rule 704 relaxed the common law rule against testimony regarding ultimate issues. See Stogner v. Belk Dept. Stores, LP, No. 3:10-cv-146-CWR-LRA, 2011 WL 1627020 (S.D. Miss. Apr. 27, 2011). The Rule states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of

fact." FED.R.EVID. 704(a). However, it does not "open the door" to all opinions. Owen. 698 F.2d at 240. "[Q]uestions that would merely allow the witness to tell the jury what results to reach are not permitted." Id. "[A]n expert may never render conclusions of law." Goodman v. Harris Cty., 571 F.3d 388, 399 (5th Cir. 2009). The Fifth Circuit has long recognized the borderline between "mere explanation of the expert's analysis of the facts," and a "forbidden opinion on the 'ultimate legal issue' in the case" United States v. Gutierrez-Farias, 294 F.3d 657, 663 (5th Cir. 2002).

Hopper's report concludes that the "incident was the direct result of Joshua's Haven asking Mr. Robinson and Dr. Bloome, both untrained and inexperienced volunteers to perform the work of professional arborists." Hopper Exp. Report, [ECF 47-5] at p. 2(emphasis added). That conclusion passes beyond the bounds of proper Rule 704 evidence. However, it is an insufficient reason to exclude the entirety of the expert testimony. Any concerns about inadmissible expert testimony can be handled using semantics, "counsel may clean up otherwise inadmissible expert testimony by merely asking a different question." Stogner, 2011 WL 1627020 at *2. "The question of whether a party's acts or omissions constitute 'negligence' under the law calls for a legal conclusion." Deville v. Conmaco/Rector, L.P., No. 09-7391, 2011 WL 13213666, at *3 (E.D. La. Feb. 4, 2011). Hopper may

“opine as to the factual cause of the accident, as well as industry standards,” however, Hopper may not present legal conclusions, such as “a duty of care owed… or whether [the Defendants] breached that duty.” Id.

Hopper will be allowed to testify about the reasonable standard of care for cutting down trees and whether Joshua’s Haven complied with those standards, but Hopper may not “usurp the Court’s role as fact finder by testifying about his opinions on whether [Joshua’s Haven} was negligent or the legal cause of the accident because these are legal conclusions for the fact finder to make.” Richardson v. SEACOR Lifeboats, LLC, No. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015). This Court will also consider objections to expert testimony on a question-by-question basis at trial. See id.

## Conclusion

The Plaintiff’s expert, Wes Hopper, is qualified to provide expert testimony regarding tree maintenance and his opinion is supported by adequate data and methodology. Hopper may utilize the ANSI standards for tree removal and safety as a guide for his opinion. However, Hopper may not testify as to the ultimate legal issue of the accident, i.e., that the accident was a direct result of the Defendant asking Bloome and Robinson to cut down the tree.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant’s Motion is DENIED.

SO ORDERED this the 4th day of December, 2019.

_/s/ David Bramlette_________

UNITED STATES DISTRICT JUDGE