IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ROBERT BLOOME                                        PLAINTIFF

vs.                              CASE NO. 5:18-cv-107-DCB-MTP

JOSHUA'S HAVEN, INC.                                 DEFENDANT


## ORDER

This matter comes before the Court on Defendant Joshua's
Haven, Inc. ("Joshua's Haven")'s Motion for Summary Judgment
(Doc. 40), Plaintiff Doctor Robert Bloome ("Dr. Bloome")'s
Response (Doc. 45), and the Defendant's Reply (Doc. 49). Having
read the motion, memoranda in support, the applicable statutory
and case law, and being otherwise fully informed in the
premises, the Court finds that the Defendant's Motion should be
DENIED.

## **Background**

This case arises out of an injury that occurred on the
premises of Joshua's Haven. Joshua's Haven is a non-profit
Florida corporation with its principle place of business in
Liberty, Mississippi. Susan Williams ("Williams") serves as the
Director of Joshua's Haven, an exotic animal sanctuary. Dr.
Bloome lives in a camper on the premises of the animal sanctuary
and has worked with Williams as a volunteer at Joshua's Haven

for several years. Will Robinson ("Robinson") was a volunteer worker at the sanctuary at the time of the accident.

On or about June 26, 2017, Williams directed Dr. Bloome and Robinson to cut down several tree limbs and an oak tree that was approximately 60 to 70 feet tall. A Mississippi Department of Wildlife, Fisheries and Parks agent told Williams that the oak tree posed a risk to the animal pens. Dr. Bloome, in his deposition, testified that The Board of Directors at Joshua's Haven authorized Williams to hire a professional arborist to remove the tree. Bloome Dep. [ECF 46-2] at p. 16:20-21. However, instead of hiring a professional, she instructed volunteers to perform the task, citing financial concerns as her justification. Williams Dep. [ECF 46-1] at pp. 21:21- 22:1.

Dr. Bloome and Robinson began to trim the limbs, at which point Williams returned inside to continue with other work. There is inconsistent testimony as to what happened next, i.e., who made what cut or cuts in the tree, where Dr. Bloome was when the tree began to fall, and to what degree Dr. Bloome and Robinson each participated in the tree removal. However, it is undisputed that in the process of cutting down the tree, the tree began to slide off the stump, becoming completely disconnected, and fell on Dr. Bloome. On the date of the accident, Robinson was an eighteen (18) year-old minor and Dr.

Bloome was a 63-year-old physician who had recently undergone back surgery.

## Standard of Review

A party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The Court is not permitted to make credibility determinations or weigh the evidence at the summary judgment stage of litigation. See Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009)(citing Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2010)). All facts and inferences must be made in "the light most favorable to the nonmoving party." See Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P., 627 F.3d 134, 138 (5th Cir. 2010)(citation omitted). "[S]ummary judgment is rarely appropriate on issues dealing with negligence and thus if reasonable minds could reach different conclusions and inferences from the evidence, the Court must submit the case to the jury." Robinson v. Dickie Mach. Welding & Metal Works Inc., No. 74-433, 1975 WL 6444176 (E.D. La. May 6, 1975)(internal quotations omitted).

## Discussion
### Status of the Plaintiff

The parties dispute which standard of care should be applied to these facts, whether the standard is that of a

premise liability action or if the applicable standard is simple negligence. If the premise liability standard applies, the status of the Plaintiff – whether he was a licensee or invitee – determines the standard of care that the Defendant must meet. "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762–763 (Miss. 1989). A licensee is one who "enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner." Id. at 763.

A landowner owes a duty to refrain from "willfully or wantonly" injuring a licensee. Id. at 763. On the other hand, a landowner owes a duty to an invitee to "exercise reasonable care to keep the premises in a reasonably safe condition and, if the invitor knows of, or by the exercise of reasonable care should have known of, a dangerous condition, which is not readily apparent to the invitee, the invitor is under a duty to warn the invitee of such a condition." Id. at 764.

However, The Hoffman exception, first articulated in Hoffman v. Planters Gin Co., 358 So.2d 1008, 1013 (Miss. 1978), established that the general distinctions between licensee and invitee do not always fit the factual circumstances at issue and

therefore, do not control every premise liability action. As the

court in Hoffman wrote,

> "We are of the opinion the testimony presented a
> conflict of facts for resolution by a jury to be
> measured by the standard of ordinary and reasonable
> care rather than the standard of intentional or wanton
> negligence as held by the trial court. We think the
> premises owner is liable for injury proximately caused
> by his affirmative or active negligence in the
> operation or control of a business which subjects
> either licensee or invitee to unusual danger, or
> increases the hazard to him, when his presence is
> known and that the standard of ordinary and reasonable
> care has application."

Id. at 1013. However, the Hoffman exception "has no place in

determining whether a cause of action falls within the realm of

premises liability versus that of simple negligence. Rather, the

Hoffman exception is applicable only in premise liability cases

where, by a finding of certain factors, the duty of care owed to

a licensee should be elevated from 'willful and wanton injury'

to a 'reasonable standard of care.'" Doe v. Jameson Inn, Inc.,

56 So.3d 549, 553 (Miss. 2011).

As a preliminary matter, this is a premise liability case

because Dr. Bloome was "injured on a landowner's premises as a

result of 'conditions or activities' on the land." See Doe, 56

So.3d at 553(citing Black's Law Dictionary 961 (7th ed. 2000)).

"The determination of which status a particular plaintiff holds

can be a jury question, but where the facts are not in dispute

the classification becomes a question of law." Clark, 538 So.2d

at 763. As the facts relevant to classification are not in dispute, the Court must determine whether the Hoffman exception applies to this case.

The Mississippi Supreme Court recently overturned cases that limited the Hoffman exception to the operation or control of a business. See Johnson v. Goodson, 267 So.3d 774, n.3 (Miss. 2019)("[W]e find that the Hoffman Court's language does not limit its holding to business owners or business premises. Cases such as Little[1] and Hughes[2] are overruled to the extent they declare otherwise.") If a case falls within the Hoffman exception, the issue becomes whether the defendant satisfied its duty of ordinary and reasonable care, "the degree of care and prudence that a person of normal intelligence would exercise under the same or similar circumstances." Mork v. Ingalls Shipbuilding, No. 99-60534, 2000 WL 294442, at *2 (5th Cir. 2000). To determine if Hoffman applies, the Court must ask: (1) was there affirmative or active negligence that subjected Dr. Bloome to "unusual danger", and (2) did Joshua's Haven know of Dr. Bloome's presence?

---

[1] Little v. Bell, 719 So.2d 757 (Miss. 1998).
[2] Hughes v. Star Homes, Inc., 379 So.2d 301 (Miss. 1980).

**Affirmative or Active Negligence**

The <u>Hoffman</u> court cited <u>Astleford v. Milner Enterprises,</u>
<u>Inc.</u>, 233 So.2d 524, 525-26 (Miss. 1970), which discussed active
and passive negligence:

> "These courts hold that where the negligence is
> passive the licensee is not permitted to recover in
> the absence of proof of willfulness (sic) or
> wantonness but where the negligence is active, that
> is, actual operation on the premises, then a licensee
> is permitted to recover if the possessor of the
> premises is guilty of simple negligence or fails to
> use ordinary, reasonable care."

The status of licensee or invitee "relates largely to negligence
for the condition of premises, that is passive negligence and
not to active or affirmative negligence emanating from action or
inaction by the possessor with knowledge of an individual's
presence." <u>Hoffman</u>, 358 So.2d at 1012.

This action has little to do with the condition of the
property. Plaintiff is not alleging that a dangerous condition
on the Defendant's premises caused the accident. Instead, Dr.
Bloome alleges that Joshua's Haven did not act with reasonable
care under the circumstances in the operation of running the
non-profit. Dr. Bloome testified in his deposition that the
Board of Directors authorized Williams to hire a professional
arborist to cut down the oak tree. <u>See</u> [ECF 46-2] at p. 16:20-
21. If this information is correct, then it can be argued that
Williams, as the director of Joshua's Haven, was implicitly

7

informed that the removal of the oak tree presented a dangerous situation that should have been dealt with by a professional.

As passive negligence relates to the condition of the premises, and active negligence relates to the operation of a business, or in this case a non-profit, the Defendant's actions fall within the category of active negligence. This determination does not establish negligence on the part of Joshua's Haven – that is a question for the trier of fact – but it defines the realm within which the jury will approach the question.

The Plaintiff asserts that Joshua's Haven is guilty of active or affirmative negligence by "instructing untrained and inexperienced volunteers to perform the extremely dangerous job of cutting down a large tree." [ECF 46] at p. 12. Joshua's Haven counters that there is no active negligence because Williams did not "direct the operation at any time." [ECF 49] at p. 5. The Defendant's argument fails to consider the entirety of the operation. Williams is the director of the non-profit Joshua's Haven, and she "carries on" the active operations of the animal sanctuary. Williams instructed two untrained volunteers to cut down a sizeable tree. That instruction led to the volunteers undertaking a job that likely exceeded their capabilities and Dr. Bloome was injured when the tree fell on him. The volunteers

used Joshua's Haven's tools to complete the task: chainsaws, wedges, a sledgehammer, and the bobcat. It is irrelevant that Williams did not "direct the operation" because she instigated the operation. Should the trier of fact determine that Joshua's Haven acted negligently, the negligence will be considered active.

**<u>Unusual Danger or Increased Hazard</u>**

Dr. Bloome's volunteer duties typically entailed cleaning cages, picking up in the yard, weed eating, feeding the animals, and meeting other basic needs. [ECF 46-1] at p. 17. Robinson volunteered as a maintenance man of sorts, handling issues regarding plumbing, construction, and electrical. [ECF 46-3] at p. 6. Robinson testified that, on a previous occasion, he and Dr. Bloome had cut down two or three pine trees on Joshua's Haven's property and that he estimated the pines were as tall – approximately 60 to 70 feet – as the tree in question, but that the tree that fell on Dr. Bloome was "just way thicker." [ECF 46-3] at p. 57. However, when Dr. Bloome discussed his history of cutting trees, he stated that he had cut down smaller trees before, but he could not remember where, and that he thought it was on property he owned. [ECF 46-2] at p. 48.

Tree removal is "noted to be one of the top most dangerous professions in the world." Hopper Exp. Report, [ECF 47-5] at p.

2. Dr. Bloome and Robinson have never been trained in proper techniques for tree removal, nor was it a common occurrence for them to fell trees as part of their volunteer duties. While there is dispute over Dr. Bloome and Robinson's prior tree removal activities for Joshua's Haven, at most, the two volunteers had only removed trees infrequently on the property. That does not create a volunteer environment where tree removal can be considered usual. Therefore, Dr. Bloome and Robinson were in a level of "unusual danger" that was atypical to their normal volunteer duties and the situation fostered an "increased hazard" to the volunteers because the activity at issue was highly dangerous.

**Known Presence**

It is undisputed that Williams knew of Dr. Bloome's presence at Joshua's Haven at the time of the accident. The elements of Hoffman are present in this action: (1) if Joshua's Haven acted negligently, the negligence would be considered active, (2) Dr. Bloome was placed in unusual danger or increased hazard, and (3) Joshua's Haven knew that Dr. Bloome was on the premises cutting down the oak tree. As such, the Court will examine the rest of Defendant's arguments under the standard of ordinary and reasonable care, and not the general premise liability classifications.

## Elements of Negligence

The Court next evaluates the Defendant's claim that Dr. Bloome fails to allege the basic elements of negligence. Under Mississippi law, a plaintiff must show: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages." <u>Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.</u>, 519 So.2d 413, 416 (Miss. 1988).

## Duty

The <u>Hoffman</u> exception provides that a landowner has a duty to act with ordinary and reasonable care if his or her active negligence creates an unusual danger for a licensee or invitee whom the landowner knows is on the property. As the Plaintiff's injury potentially resulted from active negligence on the part of Joshua's Haven, the Defendant may be liable for failure to exercise ordinary care under the circumstances. Whether a duty exists is a question of law. <u>Rein v. Benchmark Const. Co.</u>, 865 So.2d 1134, 1143 (Miss. 2004). The important consideration when evaluating whether a duty exists, is whether the injury is "reasonably foreseeable." <u>Id</u>.

When an employee is injured in a premise liability action, and the <u>Hoffman</u> exception applies, "the standard of care becomes

that of ordinary and reasonable care." See Mork v. Ingals
Shipbuilding, No. 99-60534, 2000 WL 294442, at *1 (5th Cir. Feb.
23, 2000)(finding that the standard of care for the Defendant
was ordinary and reasonable care when an employee was injured at
work because of a crane accident). As this is a premise
liability action where the Hoffman exception applies, the issue
is whether Joshua's Haven satisfied its duty of ordinary and
reasonable care, to act with the "degree of care and prudence
that a person of normal intelligence would exercise under the
same or similar circumstances." Id. at *2.

The fact that Dr. Bloome was acting in a volunteer capacity
presents a difficult situation for the parties to evaluate and
assess regarding respective roles and responsibilities of
Joshua's Haven and Dr. Bloome. Joshua's Haven states that, while
Dr. Bloome is not technically an employee, he is a gratuitous
servant of Joshua's Haven and, therefore, employment caselaw
applies. The Plaintiff asserts that, as a mere volunteer, he is
not the beneficiary of the legal protections provided to an
employee – workers compensation, minimum wage, FMLA, etc. –
therefore, Joshua's Haven should not be subject to the same
standards which apply to an employer. Joshua's Haven is held to
the standard of ordinary and reasonable care because of Hoffman.
There is arguably a duty to Dr. Bloome when applying the

standard of ordinary and reasonable care in the context of a
master/servant or employee/employer relationship.

Joshua's Haven cites the Restatement (Second) of Agency §
225 (1958) for its claim that the Plaintiff, a volunteer, is a
servant of the Defendant's. An employer/employee relationship
may not exist without remuneration, but there may be a common
law master/servant relationship.[3] See Le-Co Gin Co. v. Stratton,
131 So.2d 450, 453 (Miss. 1961)(citing Larson, Workmen's
Compensation Law, Vol. 1, Section 47-10, p. 688, "The word
'hire' connotes payment of some kind. By contrast with the
common law of master and servant, which recognized the
possibility of having a gratuitous servant, the compensation
decisions uniformly exclude from the definition of 'employee'
workers who neither receive nor expect to receive any kind of
pay for their services"); see also, Juino v. Livingston Parish
Fire Dist. No. 5, 717 F.3d 431, 436-437 (5th Cir. 2013)(finding
that compensation is an "essential condition to the existence of
an employer-employee relationship" and without financial
benefit, there can be no employment relationship).

---

[3] Joshua's Haven makes no claim that Dr. Bloome has received remuneration for
his volunteer services to Joshua's Haven. However, it should be noted that
there is ambiguity in the record as to Dr. Bloome's living arrangements; he
lives on the premises of Johsua's Haven and it is not clear if that is a
benefit for his volunteer services or if there is another arrangement that
has not been disclosed to the Court. However, Joshua's Haven claims that Dr.
Bloome was "not technically an employee." [ECF 41] at p. 15.

Section 225 states, "One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services." Section 225 addresses whether a Master can be liable for the tortious conduct of its gratuitous servant – but it makes no mention of a Master's responsibilities to its gratuitous servant. See Restatement (Second) of Agency § 225.

Section 213 addresses a Master's liability to its servants. Section 213(d) is especially illuminating:

> "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Restatement (Second) of Agency § 213(d). As the comment explains,

> "The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor… The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed… One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation."

Restatement (Second) of Agency § 225 cmt. d.

If the Court, as the Defendant argues, considers Dr. Bloome
and Robinson to be gratuitous servants of Joshua's Haven, the
Comment to the Restatement of Agency states that a Master may be
liable for negligently entrusting work or instrumentalities to a
servant who is incompetent or unskilled if the work may "subject
third persons to serious risk of great harm." As the comment to
the Restatement states, a Master has a "special duty" to
investigate issues of competence or lack of skill when the work
is likely to subject a third person to serious risk of great
harm.

Mississippi courts have expressly quoted and adopted the
principles of Section 213 of the Restatement (Second) of Agency.
See Tillman ex rel. Migues v. Singletary, 865 So.2d 350, 353
(Miss. 2003)(finding that a plaintiff swimmer, who was injured
by a negligent powerboat driver, was entitled to a jury
instruction under Section 213). The Fifth Circuit discussed
Tillman's application of Section 213, writing: "The Tillman
court approved the use of § 213 only as the basis of a jury
instruction on negligently supervising an activity. However,
because the court embraced all of § 213 with approval and the
other negligence principles of § 213 are closely analogous to
that of negligent supervision of an activity, we think the court

would apply them as well in an appropriate case." <u>Foradori v. Harris</u>, 523 F.3d 477, 488 (5th Cir. 2008). When applying the Restatement, there is a genuine issue of material fact as to whether Joshua's Haven owed a duty to investigate the competence of its volunteers, <u>i.e.</u>, gratuitous servants.

Defendant cites two employment cases to support its claim that Joshua's Haven did not owe a duty to Dr. Bloome. Neither case is persuasive. Fundamentally, there is the discrepancy between an experienced employee and an inexperienced volunteer. An employer can expect a level of competence from its employees because he or she knows an employee's capabilities and experience – especially in an inherently dangerous field. Despite these differences, using the standard as set forth in these employee/employer cases, there is arguably a duty owed to Dr. Bloome. The Court will address the two cases the Defendant cites: <u>Evans v. Journeay</u>, 488 So.2d 797 (Miss. 1986) and <u>Green Lumber Co. v. Sullivan</u>, 45 So.2d 243 (Miss. 1950).

In <u>Evans v. Journeay</u>, an employee was injured after disregarding the warning signs on a combine with which he was familiar. <u>See</u> <u>id</u>. at 798–799. The employee lubricated the combine chain with a squirt bottle of gear oil instead of aerosol spray. <u>See</u> <u>id</u>. Had the employee used the combine in a proper and normal manner, the injury would not have occurred.

See id. at 800. The court in Evans dismissed the case because it found that the Plaintiff was the sole proximate cause of the accident. See id.

When discussing duty, the court in Evans wrote, "[i]t is not the duty of the employer to furnish and maintain perfect appliances or even the best and safest. He is not obliged to exercise the highest degree of care to avoid injuries, nor any care to avoid injuries not likely to occur." Id. at 800. Here, Dr. Bloome is not claiming that Joshua's Haven failed to exercise "the highest degree of care to avoid injuries," but that Joshua's Haven failed to act reasonably under the circumstances by using inexperienced volunteers to complete a highly dangerous job. According to Dr. Bloome's deposition, the Board of Directors authorized Williams to hire a professional to cut down the tree. This arguably put her on notice that the tree removal would be dangerous and needed to be handled by a professional. It would be a fallacy to claim that placing two inexperienced volunteers in such a position would create a situation where "injuries [are] not likely to occur," removing the Defendant's duty to exercise any care. See id.

The court in Evans described the standards for employers on a sliding scale, an employer's "obligation is to use reasonable care, and what is reasonable care is largely determined in each

case by the nature, condition and extent of the danger of the instrumentalities furnished to and maintained for a servant and his work, and <u>the greater or lesser the danger the greater or lesser is the degree of care which must be taken</u>." 488 So.2d at 800(emphasis added). The Mississippi Supreme Court has emphasised that "[t]he master's duty becomes more imperative as the risk increases, as do the acts and precautions required by ordinary prudence." <u>Cherry v. Hawkins</u>, 137 So.2d 815, 398 (Miss. 1962). Additionally, "[i]t is immaterial that the servant knows as much about a complicated instrumentality as the employer, as far as the duty of the latter to furnish safe instrumentalities and appliances is concerned." <u>Id</u>.

In the present action, there was a significant danger involved in cutting down a large oak tree, danger that Williams was arguably made aware of when the Board of Directors authorized funds to hire a professional arborist to remove the oak tree, as Dr. Bloome's testified. The degree of danger was amplified by using inexperienced persons to remove the tree. Therefore, the Defendant's degree of care should have matched the degree of danger present in the situation. There is a genuine question as to whether the Defendant proceeded with sufficient care.

Green Lumber addressed an employer's duty to warn professional loggers of falling trees. It is the "non-delegable duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place in which to work." 208 Miss. 651 at 653. For professional logging, that requires providing warnings when trees are about to fall if men are cutting strips of timber in close proximity to each other. See id. The court found that the tree in Green Lumber would not "ordinarily attract the attention of anyone on the ground" and there was "no cause to suspect that the tree was in fact dangerous." 45 So.2d at 655. Therefore, the Defendant in Green Lumber did not have a duty to provide a warning because the accident was not foreseeable.

There is a genuine issue of material fact as to whether the accident at Joshua's Haven was foreseeable. While the duty to warn in Green Lumber is not applicable to these facts, the reasoning behind the court's decision may apply. As the Plaintiff correctly asserts, "[t]hese volunteers did not have the training, experience, or qualifications that one would expect of employees vetted, hired, and trained to perform a certain job… Defendant was not entitled to the expectation that the tree removal would be performed properly and safely." [ECF 46] at p. 13. As previously mentioned, the Board of Directors arguably put Williams on notice when it authorized the funds to

hire a professional to cut down the tree. Should Dr. Bloome's testimony be found accurate, there is a genuine issue of material fact as to whether the accident was foreseeable because the Board impliedly provided notice of the potential danger.

**Breach/Damages**

Establishing negligence involves a mixture of fact and law. "The determination of the standard of care to which the defendant must be held is a question of law, although its legal formulation is guided by proved fact[s]. Deciding whether the defendant adhered to that standard is then a pure question of fact." Waterbury v. Byron Jackson, Inc., 576 F.2d 1095, 1097 (5th Cir. 1978). The question of whether Joshua's Haven acted negligently and breached its duty to the Plaintiff is to be decided by the trier of fact. "Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation." Keating v. Jones Development of Mo., Inc., 398 F.2d 1011, 1015 (5th Cir. 1968). Joshua's Haven argues that Dr. Bloome is the proximate cause of his damages, not that he does not have damages. Therefore, the issue of whether the Defendant breached its duty is one for the jury.

**Causation**

When reasonable minds might differ, "the question of what is the proximate cause of an injury is usually a question for the jury." <u>American Creosote Works v. Harp</u>, 60 So.2d 514, 617 (Miss. 1952). Defendant Joshua's Haven asserts that Dr. Bloome is the sole proximate cause of his injuries and damages. Proximate cause requires: (1) cause in fact, and (2) foreseeability. <u>See</u> <u>Johnson v. Alcorn State Univ.</u>, 929 So.2d 398, 411 (Miss. Ct. App. 2006). A plaintiff cannot recover damages where the plaintiff's own negligence was the sole proximate cause of his injuries. <u>See</u> <u>Evans</u>, 488 So.2d at 799. There may be more than one proximate cause of an injury, so that even if a plaintiff is guilty of negligence he can recover from a defendant who is guilty of negligence which proximately caused or contributed to the injury. <u>See</u> <u>id</u>.

Reasonable minds could differ on the question of proximate cause in this case; whether the Defendant's instruction to cut down the oak was a "substantial factor in bringing about the injury, and without it the harm would not have occurred," and whether the injury was foreseeable. As such, this is a question for the jury. Additionally, the jury is responsible for determining the levels of comparative fault should it find that the Plaintiff bears fault for the accident. <u>See</u> Miss. Code Ann.

§ 11-7-15. Regarding the Defendant's argument that Dr. Bloome assumed the risk of cutting down the tree, Mississippi courts have held that "[t]he doctrine of assumption of the risk has largely been subsumed into our comparative-fault scheme and no longer operates as an absolute bar to recovery." Montedonico v. Mt. Gillion Baptist Church, 64 So.3d 1012, 1016 (Miss. Ct. App. 2011)(citing Churchill v. Pearl River Basin Dev. Dist., 757 So.2d 940, 943-944 (Miss. 1999)). "The defense [assumption of risk] is available to property owners/employers in suits by their hired independent contractors." Id. Dr. Bloome is not an independent contractor, so the defense of assumption of risk is not available to Joshua's Haven. As the court in Churchill wrote:

> "We take this opportunity to hold once again that the assumption of risk doctrine is subsumed into comparative negligence. Any actions which might constitute an assumption of risk should be dealt with only in the context of the comparative negligence doctrine. A jury is always free to decide that an act which constitutes an assumption of risk was the sole proximate cause of a plaintiff's injuries. We see no reason why acts which might constitute an assumption of risk should, as a matter of law, create a complete bar to recovery. The comparative negligence doctrine gives juries great flexibility in reaching a verdict. Any fault on the part of the plaintiff should be considered only in the context of comparative negligence."

757 So.2d at 943-944; see also, Miss. Code Ann. § 11-7-19("In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall

not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master.")

## Conclusion

The Hoffman exception applies to this lawsuit, making the applicable standard of care ordinary negligence. Joshua's Haven had a duty to act as a reasonably prudent entity would in undertaking the removal of the large oak tree on its property. The injury that occurred was arguably foreseeable, especially if – as Dr. Bloome testified – the Board of Directors authorized Williams to hire a professional to cut down the tree. There is a genuine issue of material fact as to whether Joshua's Haven acted with sufficient care. The issue of breach and proximate cause should be addressed by the trier of fact. As such, the Defendant's Motion for Summary Judgment is DENIED.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant's Motion is DENIED.

SO ORDERED this the 5th day of December, 2019.

_/s/ David Bramlette_____
UNITED STATES DISTRICT COURT